Filed 11/1/22

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| CHRIS MILLS, | B313943 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV44879) |
| v. | |
| FACILITY SOLUTIONS GROUP, INC., | |
| Defendant and Appellant. | |

———————————

APPEAL from an order of the Superior Court of Los Angeles County, Amy D. Hogue, Judge. Affirmed.

CDF Labor Law, Mark S. Spring and Lindsay A. Ayers for Defendant and Appellant.

Berenjie Law Firm, Shadie L. Berenji and David C. Hopper for Plaintiff and Respondent.

———————————

In November 2020 Chris Mills filed a complaint against his former employer, Facility Solutions Group, Inc. (FSG), for disability discrimination and related causes of action under the Fair Employment & Housing Act (FEHA; Gov. Code, § 12900 et seq.) (*Mills v. Facility Solutions Group, Inc.* (Super. Ct. L.A. County, 2020, No. 20STCV44744) (*Mills I*). The same month Mills filed this class action against FSG for Labor Code violations, which also included a claim under the Private Attorneys General Act of 2004 (PAGA; Labor Code, § 2698 et seq.).[1] In February 2021 the trial court in *Mills I* (Judge Daniel S. Murphy) granted FSG's motion to compel arbitration, finding the substantively unconscionable terms in the arbitration agreement could be severed from the agreement. FSG then moved to compel arbitration in this action under the same arbitration agreement. The trial court in this action (Judge Amy D. Hogue) denied FSG's motion, finding unconscionability permeated the arbitration agreement because it had a low to moderate level of procedural unconscionability and at least six substantively unconscionable terms, making severance infeasible.

On appeal, FSG contends claim and issue preclusion required the trial court in this action to enforce the arbitration agreement. However, Judge Murphy's order granting FSG's motion to compel arbitration is not final, so claim and issue preclusion do not apply.

FSG also argues the arbitration agreement is not unconscionable, or in the alternative, the trial court abused its discretion in not severing any unconscionable terms. Neither

---

[1]    Further undesignated statutory references are to the Labor Code.

2

contention has merit.  We agree with the trial court the arbitration agreement is permeated with unconscionability, and the court cannot simply sever the offending provisions.  Rather, the court would need to rewrite the agreement, creating a new agreement to which the parties never agreed.  Moreover, upholding this type of agreement with multiple unconscionable terms would create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Mills's Employment and the Arbitration Agreement*
        Mills was employed by FSG as an apprentice electrician from October 2, 2018 to August 27, 2019.  FSG required new employees to access, review, and electronically sign documents, including an arbitration agreement.  Mills reviewed FSG's onboarding documents using a cellphone application.  On October 5, 2018 Mills electronically signed a two-page, single-spaced arbitration agreement in small print titled "Employee Arbitration Agreement" (arbitration agreement).

        Under the arbitration agreement, Mills and FSG agreed "to submit any and all such disputes" that arise "during or after employment with FSG" to binding arbitration.  Further, the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) "will govern the interpretation, enforcement, and all judicial proceedings under and/or with respect to the Arbitration Agreement."  The agreement provided under "General Procedures" that the

3

American Arbitration Association's Employment Arbitration Rules and Mediation Procedures (AAA rules) would apply; the hearing arbitrator would apply the substantive law and the law of remedies of the state in which the claim arose; and the arbitration decisions and awards would be "strictly confidential" and not disclosed except as necessary for judicial enforcement.

The arbitration agreement provided for limited discovery, including the right to take depositions and designate expert witnesses. Parties could obtain additional discovery pursuant to an order by the arbitrator "upon a showing of substantial need." The agreement required a party to make a written demand for arbitration within the applicable statute of limitations, and specified that the limitations period would not be stayed by the filing of a lawsuit. The agreement provided further that Mills agreed to pursue his claims against FSG "solely on an individual basis, and [to] waive any and all rights to proceed as a member of a group or class against FSG." The agreement required Mills to pay a $250 filing fee, with FSG to bear the remaining administrative fees and arbitrator compensation. However, any fees for postponement of the arbitration must be paid by the party causing the postponement. The agreement provided further for an award of attorneys' fees to the prevailing party, to be determined pursuant to the definition of a prevailing party under the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988). The agreement allowed either party to appeal the arbitration award to a panel of three arbitrators, with the fees and expenses to be paid by the appellant or shared if there is a cross-appeal. If the arbitration panel remanded the matter for a new hearing, the parties would share the additional costs of arbitration. Finally, the agreement included a severability clause

4

that stated if any provision of the agreement is invalidated, "such determination shall not affect the validity of the remainder of this Agreement." (Underlining omitted.)

B. *The FEHA Action (*Mills I*)*

On November 23, 2020 Mills filed a complaint in *Mills I*, in which he alleged causes of action under FEHA for disability discrimination; failure to engage in the interactive process; failure to provide reasonable accommodations; retaliation; failure to prevent discrimination and retaliation; wrongful termination in violation of public policy; and failure to provide personnel and payroll records. On February 8, 2021 Judge Murphy granted FSG's motion to compel arbitration, finding Mills "established a low degree of procedural unconscionability" because the arbitration agreement was a contract of adhesion. Further, some of the provisions of the arbitration agreement were substantively unconscionable, but they could be severed from the agreement. Judge Murphy reasoned the waiver of representative claims was not relevant to his analysis because Mills was "not pursuing a PAGA claim in this action."

C. *This Action Alleging Class and PAGA Claims*

On November 20, 2020 Mills filed a class action on behalf of himself and other former and current employees against FSG alleging violations of the Labor Code for (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) unlawful deduction of wages; (4) failure to pay vested vacation wages; (5) failure to provide meal periods; (6) failure to reimburse business expenses; (7) failure to timely pay wages; (8) failure to maintain payroll records and provide accurate itemized wage

5

statements; and (9) failure to provide one day's rest out of seven. Mills also alleged a cause of action for unfair competition in violation of Business and Professions Code section 17200. In addition, Mills asserted a cause of action under PAGA seeking civil penalties for the alleged Labor Code violations.

D.  *FSG's Motion To Compel Arbitration*

On April 16, 2021 FSG moved to compel arbitration of Mills's class and PAGA claims. FSG contended Mills consented to the arbitration agreement; Mills's individual claims were subject to the arbitration agreement; the class claims must be dismissed because of the class action waiver; and the arbitration agreement satisfied the requirements set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*). As to the PAGA waiver, FSG argued the court should "sever the unenforceable part of the class waiver 'of a group'" and stay the claim until completion of the arbitration. FSG also argued claim preclusion barred relitigation of the enforceability of the arbitration agreement.

In opposition, Mills argued Judge Murphy's order granting FSG's motion to compel arbitration in *Mills I* did not bar him from litigating the arbitration agreement's enforceability in this action. Further, the arbitration agreement was procedurally and substantively unconscionable, and the agreement's unconscionable terms could not be remedied through reformation or severance. Mills also objected to a stay of the PAGA claim if the trial court compelled arbitration of his individual claims.

Following argument from the attorneys, on May 14, 2021 the trial court (Judge Hogue) denied FSG's motion to compel arbitration. The court took judicial notice of the order compelling

6

arbitration in *Mills I*, but it concluded issue preclusion did not bar litigation of the enforceability of the arbitration agreement because Judge Murphy did not address whether the PAGA waiver was substantively unconscionable. The court found low to moderate procedural unconscionability, noting Mills was required to sign the arbitration agreement as a condition of employment, the font was small (page one contained over 60 lines of text), and "[r]eading this text on a cell phone would be difficult." The court also found a high degree of substantive unconscionability, citing six unconscionable provisions, including the arbitration fee, postponement fee, appeal costs, attorneys' fees, limited discovery, bar on tolling of the statute of limitations, and PAGA waiver.

The court found severance of these provisions was not feasible, explaining, "[T]his [arbitration agreement] has too many provisions that are troublesome for the court to grant arbitration, notwithstanding, of course, the strong policy in favor of it. I mean, this is not one I can sever, slice, and dice. . . . [J]ust for example, the postponement fees—there's nothing like that in court. . . . And those [arbitration] companies regularly have huge postponement fees because they're trying to book the arbitrator's time, and it's a problem for them if, suddenly, somebody has to move a hearing date and they have an open calendar that, otherwise, should have been filled. So they impose straight-up fees for postponement. The court does not impose any fees for postponement. Sure, I can impose sanctions if somebody abuses the discovery process, but . . . I'd hate to tell you how many continuances the court grants on a daily basis, and it's free. And . . . I think the substantial need requirement for discovery—that's very different than the Code of Civil Procedure. . . . [T]here's just

so many problematic provisions here that I can't in good conscience enforce the arbitration agreement."

FSG timely appealed.

## DISCUSSION

A.    *Claim and Issue Preclusion Do Not Apply*

"Claim preclusion prevents relitigation of entire causes of action.  [Citations.]  Claim preclusion applies only when 'a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326-327; accord, *Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323.)  "Issue preclusion, by contrast, prevents 'relitigation of previously decided issues,' rather than causes of action as a whole.  [Citation.]  It applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" (*Samara*, at p. 327; accord, *Grande*, at p. 323.) "Whether claim or issue preclusion applies in a particular case is a question of law." (*Parkford Owners for a Better Community v. Windeshausen* (2022) 81 Cal.App.5th 216, 225 (*Parkford*); accord, *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325.)

FSG contends both claim preclusion and issue preclusion bar Mills from relitigating the enforceability of the arbitration agreement.  FSG argues Judge Murphy's order compelling arbitration in *Mills I* adjudicated Mills's right to bring his employment claims in state court; *Mills I* and this action involve the same parties; and the order in *Mills I* was a final adjudication

8

on the merits.  FSG's contention lacks merit because Judge Murphy's order was not a final adjudication.

"A judgment or adjudication is on the merits if the substance of the claim or issue is tried and determined." (*Parkford, supra*, 81 Cal.App.5th at p. 227 [neither claim nor issue preclusion applied where appeal in first action was dismissed as moot]; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77 [trial court's ruling based on laches was not a judgment on the merits].)  "'A prior adjudication of an issue in another action may be deemed "sufficiently firm" to be accorded preclusive effect based on the following factors: (1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal.'" (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 663; accord, *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1565.)

Judge Murphy's order granting FSG's motion to compel arbitration is not a final adjudication on the merits because an order compelling arbitration "'is not appealable, but is reviewable on appeal from a subsequent judgment on the award.'" (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 943; accord, *Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94; see Code Civ. Proc., §§ 1294, 1294.2.)[2]

---

[2]    Mills filed a notice of appeal in *Mills I*, and the appeal is still pending. (*Mills I, supra*, B316303, app. pending.)  On October 5, 2022 we issued an order stating we would dismiss the appeal unless Mills shows cause why the order compelling arbitration was immediately appealable.  We acknowledge the trial court found issue preclusion did not apply because Judge

9

B.	*Governing Law on Unconscionability of Arbitration Agreements*

"An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'  (Code Civ. Proc., § 1281; see 9 U.S.C. § 2.)"  (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*); accord, *Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 580.)  "'"[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law."  (*OTO*, at p. 125; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)

"A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.  [Citation.]  Under this standard, the unconscionability doctrine '"has both a procedural and a substantive element."'"  (*OTO, supra*, 8 Cal.5th at p. 125; accord, *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910 (*Sanchez*).)  "'The

---

Murphy did not decide whether the PAGA waiver rendered the arbitration agreement unenforceable.  However, "'"a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.  If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion."'"  (*People v. Turner* (2020) 10 Cal.5th 786, 807; accord, *People v. Brooks* (2017) 3 Cal.5th 1, 39 ["Although this analysis is different from ours, we have explained that '"we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm."'"].)

10

procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.'"  (*OTO*, at p. 125; accord, *Pinnacle, supra,* 55 Cal.4th at p. 246.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'  [Citation.]  Instead, they are evaluated on '"a sliding scale."'  [Citation.]  '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable.  [Citation.]  Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required."  (*OTO, supra*, 8 Cal.5th at pp. 125-126; accord, *Sanchez, supra*, 61 Cal.4th at p. 910.)  "'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'"  (*OTO*, at p. 126; accord, *Sanchez*, at p. 912.)

"The burden of proving unconscionability rests upon the party asserting it."  (*OTO, supra*, 8 Cal.5th at p. 126; accord, *Sanchez, supra*, 61 Cal.4th at p. 911.)  "'Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo.'"  (*OTO*, at p. 126; accord, *Pinnacle, supra*, 55 Cal.4th at p. 236.)

C.    *The Arbitration Agreement Has Elements of Procedural Unconscionability*

"An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" (*OTO, supra,* 8 Cal.5th at p. 126; accord, *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245.)  If the "circumstances of the contract's formation created . . . oppression or surprise . . . closer scrutiny of its overall fairness is required." (*OTO,* at p. 126; *Baltazar,* at pp. 1245-1246.)  "'"*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*OTO,* at p. 126; accord, *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 983.)  "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*OTO,* at pp. 126-127; accord, *Nunez v. Cycad Management LLC* (2022) 77 Cal.App.5th 276, 284.)  "[S]urprise" occurs where the arbitration agreement is "written in an extremely small font" with "'visually impenetrable'" paragraphs "filled with statutory references and legal jargon." (*OTO,* at p. 128.)

It is undisputed the arbitration agreement is an adhesive contract because it was imposed as a condition of employment. (*OTO, supra,* 8 Cal.5th at p. 126 ["Arbitration contracts imposed

12

as a condition of employment are typically adhesive."]; *Armendariz, supra*, 24 Cal.4th at p. 115 ["[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement."].) FSG concedes the arbitration agreement "was a form agreement presented as a condition of employment," but it argues "this fact alone presents only a fairly low level of procedural unconscionability." Although Mills was given time to sign the arbitration agreement, the single-spaced, two-page agreement was written in a small font, with over 60 lines of text on the first page alone. Further, Mills accessed the agreement on his cell phone, which as the trial court noted, would make it difficult to read the small print.[3] Because the arbitration agreement had elements of procedural unconscionability, we "closely scrutinize the substantive terms 'to ensure they are not manifestly unfair or one-sided.'" (*OTO,* at p. 130; accord, *Baltazar v. Forever 21, Inc., supra*, 62 Cal.4th at p. 1244.)

---

[3]    FSG asserts Mills could have accessed the agreement on his personal computer, pointing to the "Paycom" account instructions emailed to employees. Although the agreement would likely be easier to read on a computer than a mobile phone, the record does not reflect whether Mills had access to a computer to review the form. In any event, the agreement has small print with many lines of text on each page.

13

D.	*The Arbitration Agreement Is Substantively Unconscionable*

As the *Armendariz* court explained, based on "the basic principle of nonwaivability of statutory civil rights in the workplace," there are "five minimum requirements for the lawful arbitration of such rights pursuant to a mandatory employment arbitration agreement. Such an arbitration agreement is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. Thus, an employee who is made to use arbitration as a condition of employment "effectively may vindicate [his or her] statutory cause of action in the arbitral forum."'" (*Armendariz, supra*, 24 Cal.4th at p. 102, italics omitted.) We agree with Mills that, as the trial court found, the arbitration agreement has multiple provisions that fail to meet this standard, rendering the agreement unconscionable.[4]

1.	*The arbitration agreement improperly required Mills to pay a filing fee and costs of postponement*

An employer-mandated arbitration agreement "is lawful if it . . . does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (*Armendariz, supra*, 24 Cal.4th at p. 102; accord, *Boghos v. Certain Underwriters at Lloyd's of London*

---

[4]	It is undisputed the arbitration agreement provides for a neutral arbitrator, requires the hearing arbitrator to "provide brief findings of fact and conclusions of law," and incorporates the AAA rules, which provide for a written award.

(2005) 36 Cal.4th 495, 506.) Further, the employer is obligated "to pay all types of costs that are unique to arbitration." (*Armendarez*, at p. 113; accord, *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 (*Little*).)

Mills contends the arbitration agreement improperly required him to pay an arbitration filing fee and the costs of postponement of the arbitral proceedings if Mills requested the postponement. These contentions have merit.

Section 5 of the arbitration agreement provides, "There will be both administrative fees and arbitrator compensation incurred for any arbitration hearing. When I file and serve a demand, the filing fee, included in the administrative fees, for the arbitration hearing will be paid $250.00 by me and the remainder by FSG. Arbitrator compensation and administrative fees are not subject to re-allocation in the award, but any fees for postponements shall be paid by the party causing the postponement."

As to the $250 filing fee, FSG argues a similar filing fee is required to bring a superior court lawsuit. But under sections 218.5, subdivision (a) (claim for nonpayment of wages), 1194, subdivision (a) (minimum wage claim), and 2802, subdivisions (b) and (c) (unpaid business expenses), a prevailing employee may recover his or her costs as a prevailing party.[5] By

---

[5]    Section 218.5, subdivision (a), provides as to a lawsuit for the nonpayment of wages that the prevailing party may recover attorneys' fees and costs, but "if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith." Section 1194, subdivision (a), provides that where an employer fails to pay the minimum wage or legal overtime compensation, "the employee is

15

contrast, section 5 of the arbitration agreement bars reallocation of administrative costs (including the $250 filing fee) to FSG. Because the fees provision barring reallocation creates unique arbitration costs with respect to Mills's Labor Code claims, it is unconscionable.  (See *Armendariz, supra*, 24 Cal.4th at p. 113; *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 510 & fn. 11 (*Ontiveros*) [provision requiring employee to pay portion of filing fee and arbitration costs "is unlawful and hence substantively unconscionable," regardless of whether the amount is small (lesser of one week's pay or 10 percent of amount at issue)]; but see *De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 491 (*DeLeon*) [cost provision limiting employee's arbitration costs and fees to $100 was not unconscionable].)

The postponement costs are unique to arbitration in that the superior court limits the fees a party must pay for requesting a continuance (now $20 or $60), and only requires the payment of a fee for the filing of a pleading requesting or noticing the continuance.  (See Gov. Code, § 70617, subds. (a)(2) [$60 fee for filing specified pleadings to continue trial date], (c)(1) [$20 fee for

---

entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  Section 2802 provides as to an award for reimbursement of necessary business expenditures that an employee may recover as "'necessary expenditures,'" "all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."  (§ 2802, subds. (b), (c).)

16

filing specified pleadings to continue hearing or case management conference, unless court required continuance].) Further, as discussed, a prevailing employee may recover costs incurred, which would include the costs of seeking a continuance. Thus, the provision requiring the employee to pay the costs of a postponement is substantively unconscionable.  (See *Little, supra*, 29 Cal.4th at p. 1076; *Armendariz, supra*, 24 Cal.4th at p. 102.)

In its reply brief, FSG argues that requiring a party to pay the costs of postponement of the proceeding is not unique to arbitration because courts have the authority to sanction a party for discovery abuses under Code of Civil Procedure section 2023.030, including for delays.  However, in contrast to discovery sanctions, the arbitration agreement requires payment of the costs of postponement by the party requesting the continuance regardless of whether the party was at fault for the delay.

2.    *The arbitration agreement unreasonably required Mills to pay the costs of an appeal and potential second hearing*

The arbitration agreement allows either party to appeal the arbitration award to a panel of three arbitrators, with the appellant paying the costs of the arbitrators and the parties sharing the cost of a second hearing.  Specifically, the arbitration agreement provides in subdivision 7.c, "The fees and expenses of the appellate arbitrators shall be shared if both an appeal and a cross-appeal are served.  If only an appeal is served, the fees and expenses of the appellate arbitrators shall be paid by the appellant party (or parties)."  The agreement provides further in subdivision 7.h that in the event of a remand following an appeal,

17

"the fees and expenses of the new hearing arbitrator shall be shared equally by the parties to the rehearing, unless otherwise agreed or ordered." Mills contends these provisions are additional indicia that the arbitration agreement is substantively unconscionable. Mills is again correct.

As the Supreme Court explained in *Sanchez, supra,* 61 Cal.4th at page 920 in the context of a consumer arbitration, "[T]he arbitration agreement did not have to provide for an appeal. But having done so, the agreement may not structure the appeal process so that it unreasonably favors one party, just as the agreement may not authorize only one party and not the other to take an appeal." The appeal provisions in the arbitration agreement would deter an employee from appealing an arbitration award (or filing a cross-appeal) by requiring the employee to pay the fees and expenses of three arbitrators, the most expensive form of an appeal, and upon a successful result, the employee would need to share the costs of a second hearing. Further, even upon a successful appeal by the employer, the employee would be required to share the costs of the second hearing.

FSG argues the arbitration agreement's appeal provisions are bilateral in that they affect FSG and Mills equally. But FSG would have greater resources to pay the appellate and remand costs, thus encouraging an appeal by FSG but discouraging one by Mills. (See *Alvarez v. Altamed Health Services Corp., supra,* 60 Cal.App.5th at p. 593 [trial court could have reasonably found "appellate arbitral review provision benefits the employer in employee-employer arbitrations because the employer could unilaterally add costs and time to the arbitration proceeding by seeking this review and thereby maximize the employer's status

18

as the better resourced party"]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 74 [three-arbitrator panel provision requiring "the most expensive kind of arbitration" was substantively unconscionable because "[t]he cost of such an arbitration panel would not only deter [the patient] from seeking relief, it would effectively prohibit it"].)

Here, if Mills were to prevail in the arbitration, FSG could unilaterally add costs and delay by appealing the arbitration award, potentially forcing Mills to pay the costs of a second hearing (although FSG would have to pay the costs of its appeal). If Mills were to lose in the arbitration, he would unlikely appeal the arbitration award because he must pay the fees and expenses of three arbitrators, and if successful on appeal, he must share the costs of a second hearing. As Mills averred in his declaration, he could not afford to pay the fees and costs that would be charged by three arbitrators, which he asserts typically range for each arbitrator from $3,200 to $10,000 per day. These provisions are substantively unconscionable because in practice they unreasonably favor FSG.

3. *The arbitration agreement's attorneys' fees provisions are substantively unconscionable*

"[A]n arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." (*Armendariz, supra*, 24 Cal.4th at p. 103.) Further, an arbitration agreement "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Id.* at pp. 110-111; accord, *Patterson v. Superior Court* (2021) 70 Cal.App.5th 473, 488 (*Patterson*).) We agree with Mills that

19

the arbitration agreement is substantively unconscionable because it allows FSG to recover attorneys' fees and costs that would not otherwise be recoverable in the trial court.

Section 6.b of the arbitration agreement provides the arbitrator "shall assess attorney's fees against a party upon a showing that such party's claim, defense, or position is frivolous, or unreasonable, or factually groundless." This provision is inconsistent with section 218.5, subdivision (a), which provides as to a lawsuit for the nonpayment of wages that the prevailing party may recover its attorneys' fees and costs, but "if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith." (See *Dane Elec Corp., USA v. Bodokh* (2019) 35 Cal.App.5th 761, 773 [explaining as to section 218.5, subdivision (a), that "[c]ourts have uniformly recognized that such unilateral fee-shifting statutes 'reflect a considered legislative judgment that prevailing defendants should not receive fees'"]; *USS-Posco Industries v. Case* (2016) 244 Cal.App.4th 197, 216 [2014 amendment to section 218.5 changed the law from a "'two way' fee shifting statute that awarded fees to the winner, whether employee or employer," to a provision that only awards fees to the employer where the employee brought the action in bad faith].) Moreover, as discussed, section 1194, subdivision (a) (minimum wage claims) and section 2802, subdivisions (b) and (c) (reimbursement of

business expenses), only provide for recovery of attorneys' fees by the prevailing employee, not the employer.[6]

Section 6.b is therefore substantively unconscionable because it forces Mills to pay FSG's attorneys' fees and costs in situations where Mills's claims are found to be "factually groundless" but not brought in bad faith, contrary to section 218.5, subdivision (a), which would otherwise apply in the trial court, and contrary to the prevailing employee provisions in sections 1194 and 2802. (See *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 800 [arbitration provision requiring employee to pay attorneys' fees to prevailing defendants was unconscionable because it "imposes on [the employee] the obligation to pay [the employer's] attorney fees where she would have no such obligation under at least one of her California statutory claims"]; *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249 [arbitration provision entitling prevailing party to attorneys' fees "without any limitation for a frivolous action or

---

[6] As the Supreme Court explained in *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1251, "section 1194 is a one-way fee-shifting statute, authorizing an award of attorney's fees only to employees who prevail on their minimum wage or overtime claims." (Accord, *Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 240 ["'Because section 1194 provides only for a successful *plaintiff* to recover attorney fees and costs, it is a one-way fee-shifting statute [that] preclude[es] an employer from collecting fees and costs even if the employer prevails on a minimum wage or overtime claim.'"].) Section 2802 similarly only authorizes an award of attorneys' fees to the employee.

one brought in bad faith" under FEHA was unlawful under *Armendariz*].)[7]

FSG contends that notwithstanding section 6.b, the arbitrator was required to award attorneys' fees consistent with sections 218.5, 1194, and 2802 because section 3.b of the arbitration agreement (under "General Provisions") provided that "[t]he hearing arbitrator shall apply the substantive law (and the laws of remedies, if applicable), in the state in which the claim arose, or federal law, or both, depending on the claims asserted." We agree with the reasoning of *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 251 (*Carbajal*), which rejected a similar argument. The arbitration agreement in *Carbajal* required the parties to bear their own attorneys' fees, although the employee would have been entitled to recover her attorneys' fees in court as a prevailing party on many of her statutory wage claims.[8] (*Id.* at

---

[7] Under FEHA, "a successful plaintiff is entitled to recover his or her reasonable attorney fees. A prevailing defendant, however, may not be awarded attorney fees or costs 'unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so.'" (*Patterson, supra*, 70 Cal.App.5th at p. 477; see Gov. Code, § 12965, subd. (c)(6).)

[8] The *Carbajal* court explained, "The Agreement's arbitration provision also is substantively unconscionable because it requires the parties to bear their own attorney fees, but many of Carbajal's statutory wage claims would entitle her to recover her attorney fees if she prevails. (See Labor Code §§ 218.5, subd. (a) [attorney fees recoverable in successful action for nonpayment of wages], . . . 1194, subd. (a) [attorney fees recoverable in successful action for minimum and overtime wages], 2802 [attorney fees recoverable in successful indemnity action for

22

p. 250.)  The *Carbajal* court concluded the attorneys' fees provision was substantively unconscionable despite the provision in the arbitration agreement authorizing the arbitrators "to award all types of relief that would otherwise be available to the parties in a court proceeding under State or Federal law.'" (*Id.* at p. 251.)  The court reasoned, "The arbitration provision's plain language requires the parties to be responsible for their own attorney fees without any exceptions.  Nothing in the provision's language suggests the parties intended to limit or qualify this provision by also granting the arbitrators broad authority to award all types of relief authorized by law. '[W]hen there are conflicting clauses the more specific clause controls the more general.'" (*Ibid*.)  Here too, the specific attorneys' fees provision allowing FSG to recover its attorneys' fees and costs as the prevailing party regardless of whether Mills brought his claims in bad faith (or awarding any fees and costs to FSG on Mills's claims under sections 1194 and 2802) would control over the more general choice of law provision in the agreement.

FSG's reliance on Rule 39(d) of the AAA rules is similarly misplaced.  Rule 39(d) provides, "The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law."

---

reimburse of business expenses].)  At a minimum, Carbajal would be entitled to recover her attorney fees if she prevailed on her first cause of action for unpaid wages, fourth cause of action for illegal deductions from wages, fifth cause of action for failure to provide accurate itemized wage statements, and sixth cause of action for failure to compensate for business expenses." (*Carbajal, supra*, 245 Cal.App.4th at pp. 250-251.)

23

Although Rule 39(d) would authorize the arbitrator to limit an award of attorneys' fees and costs to FSG consistent with sections 218.5, 1194, and 2802, it does not require the arbitrator to do so. And, similar to section 3.b's incorporation of state substantive law and law of remedies, the more specific attorneys' fees provision controls.

Section 6.c of the arbitration agreement's attorneys' fees provision is likewise substantively unconscionable because it imposed on Mills the attorneys' fees and costs incurred by FSG in moving to compel arbitration notwithstanding the requirement under section 218.5, subdivision (a), that a prevailing employer show bad faith, and the one-way fee-shifting provisions of sections 1194 and 2802, which award attorneys' fees and costs only to prevailing employees. Section 6.c provides that if any party brings a claim outside of the arbitration process, "the responding party shall be entitled to dismissal of such action, and the recovery of all costs and attorney's fees and losses related to such action." In *Patterson, supra*, 70 Cal.App.5th at page 489, we found unenforceable under *Armendariz* a similar fee-shifting clause, which required the party opposing arbitration to pay the attorneys' fees, costs, and expenses of the party that successfully moved to compel arbitration. We explained that "[p]ermitting [the employer] to recover its attorney fees for a successful motion to compel arbitration in a pending FEHA lawsuit without a showing the plaintiff's insistence on a judicial forum to determine his or her claims was objectively groundless . . . denies the plaintiff the rights guaranteed by [FEHA] with a corresponding chill on access to the courts for any employee or former employee who has an arguably meritorious argument that the . . . arbitration agreement is unenforceable." (*Patterson*, at p. 489

24

accord, *Ramirez v. Charter Communications, Inc.* (2022)
75 Cal.App.5th 365, 378, review granted June 1, 2022, S273802.)[9]

> 4.      *The arbitration agreement does not provide for*
>          *adequate discovery*

Although parties may "agree to something *less than* the full
panoply of discovery," employees "are at least entitled to
discovery sufficient to adequately arbitrate their statutory claim,
including access to essential documents and witnesses, as
determined by the arbitrator(s) . . . ." (*Armendariz, supra*,
24 Cal.4th at pp. 105-106; accord, *De Leon, supra*, 72 Cal.App.5th
at p. 487.)  As the *Armendariz* court explained with respect to
FEHA claims, "We agree that adequate discovery is
indispensable for the vindication of FEHA claims." (*Amendariz*,
at p. 104.)  "In striking the appropriate balance between the
desired simplicity of limited discovery and an employee's
statutory rights, courts assess the amount of default discovery

---

[9]      In *Patterson, supra*, 70 Cal.App.5th at page 490, we
construed the arbitration agreement's prevailing party fee
provision "to impliedly incorporate the FEHA asymmetric rule for
awarding attorney fees and costs" in light of the strong public
policy favoring arbitration.  (But see *Ramirez v. Charter
Communications, Inc., supra*, 75 Cal.App.5th at p. 382, review
granted [disagreeing with *Patterson* that attorneys' fees provision
"can be saved by impliedly incorporating the FEHA asymmetrical
attorney fee standard into its unambiguous language"].)  Unlike
*Patterson*, in which the arbitration agreement contained only one
unenforceable provision, as discussed below, the trial court here
did not abuse its discretion in declining to sever or reform the
arbitration agreement to address multiple substantively
unconscionable provisions.

permitted under the arbitration agreement, the standard for obtaining additional discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims." (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 910-911 (*Davis*); accord, *De Leon*, at p. 487.) "The denial of adequate discovery in arbitration proceedings leads to the de facto frustration of the employee's statutory rights." (*Armendariz*, at p. 104; accord*, Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 106.)

The arbitration agreement allows each party to take depositions, designate expert witnesses, and subpoena witnesses, but it does not expressly allow for document requests, requests for admission, or interrogatories. Instead, "[a]dditional discovery may be had only where the hearing arbitrator so orders, upon a showing of substantial need." We agree with Mills the discovery provision is substantively unconscionable.

*Ontiveros, supra*, 164 Cal.App.4th at pages 511 to 514 is on point. There, the Court of Appeal found substantively unconscionable an employment arbitration agreement that allowed each party to take only one deposition in addition to expert depositions and document requests, with the right to additional discovery by order of the arbitrator "'upon a showing of substantial need.'" (*Id.* at pp. 511, 514.) The court explained, after noting the employee's attorney stated at least 15 to 20 depositions would be necessary given the complexity of the case, "[T]he permitted amount of discovery is so low while the burden for showing a need for more discovery is so high that plaintiff's ability to prove her claims would be unlawfully thwarted by the discovery provision in the agreement." (*Id.* at p. 513; see *Davis, supra*, 53 Cal.App.5th at p. 914 ["'Seemingly neutral limitations

26

on discovery in employment disputes may be nonmutual in effect. "'This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses.'"'"].) As in *Ontiveros*, the arbitration agreement's limits on written discovery seriously disadvantage the employee because FSG would have possession of most relevant documents.

FSG contends the arbitration agreement provides for adequate discovery because Rule 9 of the AAA rules supplements the agreement's discovery provision by providing, "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." FSG relies on our decision in *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1476, which concluded the AAA discovery rule provided adequate discovery because it expressly authorized the arbitrator to order depositions and written discovery "'as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.'" However, in *Roman*, discovery was governed only by the AAA discovery provision incorporated into the arbitration agreement. Here, the arbitration agreement contains a specific provision limiting discovery, which would govern the parties' dispute.

FSG's arbitration agreement is more analogous to the one in *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 718-719 (*Fitz*). There, the arbitration agreement incorporated the AAA rules but limited discovery to the taking of two depositions and depositions of expert witnesses expected to testify, with no additional

27

discovery "unless the arbitrator finds a compelling need to allow it." (*Id.* at p. 716.) The Court of Appeal observed the employer "chose to modify the AAA's rules of discovery to its advantage" because the employer had in its possession many of the documents relevant to the plaintiff's employment discrimination case, and it employed many of the relevant witnesses. (*Id.* at p. 718.) The court reasoned the provision granting the arbitrator discretion to allow additional discovery was "an inadequate safety valve" because given the limited discovery allowed under the agreement, an employee would be "unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery."[10] (*Id.* at pp. 717-718.) Mills similarly "will not have access to written documents or the benefit of initial interrogatories when requesting additional information to vindicate [his] statutory claim." (*Id.*, at p. 717.)

We conclude the arbitration agreement's discovery provision is substantively unconscionable because it does not provide for sufficient discovery for Mills to arbitrate his statutory claims. (*Armendariz, supra*, 24 Cal.4th at p. 106; see *Nunez v. Cycad Management LLC, supra*, 77 Cal.App.5th at p. 285 [provision limiting "discovery to 'three depositions and an

---

[10] The *Fitz* court rejected the employer's argument that Rule 1 of the AAA rules ensured there would be adequate discovery by its provision that "[i]f a party establishes that an adverse material inconsistency exists between the arbitration agreement and [these] rules, the arbitrator shall apply [these] rules." (*Fitz, supra*, 118 Cal.App.4th at p. 719.) The court explained the adverse "material inconsistency" language in Rule 1 "cannot make the AAA discovery provisions trump the limits on discovery that [the employer] deliberately established" in the arbitration agreement. (*Id.*, at p. 720.)

28

aggregate of thirty (30) discovery requests of any kind, including sub-parts'" was unconscionable because it prevented employee "from vindicating statutory claims"].)

5.    *The arbitration agreement improperly bars tolling of the statute of limitations*

Section 1 of the arbitration agreement provides that a party asserting one or more claims must make a written demand for arbitration within the applicable statute of limitations.  However, section 1 provides further, "Neither filing nor serving a lawsuit stops the applicable statute of limitations from continuing to run."  (Boldface omitted.)  The arbitration agreement's tolling bar directly conflicts with Code of Civil Procedure section 1281.12, which states that where an arbitration agreement requires a demand for arbitration be made within a specified time, the filing of a civil action by the party within that time "shall toll the applicable time limitations contained in the arbitration agreement with respect to that controversy."  Thus, under Code of Civil Procedure section 1281.12, if a plaintiff files a civil action within the applicable limitations period, but the statute of limitations runs prior to the trial court granting a motion to compel arbitration, the plaintiff's claim would be preserved.  By contrast, under the arbitration agreement, the claim would be barred.

The appellate courts have found arbitration provisions shortening the limitations period for causes of action alleging violations of the Labor Code are substantively unconscionable.  (See, e.g., *De Leon, supra*, 72 Cal.App.5th at p. 487 [arbitration provision shortening limitations period for wage-and-hour claims to one year was unconscionable]; *Pinela v. Neiman Marcus*

29

*Group, Inc., supra*, 238 Cal.App.4th at p. 256 [same]; *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1147 [arbitration provision shortening limitations period for wage-and-hour claims to six months was unconscionable].) FSG's argument that Mills was not harmed by the tolling bar because the statute of limitations on his claims has not yet run is not persuasive because the enforceability of the arbitration agreement is measured as of the date the parties entered into the agreement. (See Civ. Code, § 1670.5, subd. (a) [court considers whether agreement was unconscionable "at the time it was made"]; *Armendariz, supra*, 24 Cal.4th at p. 114 [quoting Civ. Code, § 1670.5]; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 116 ["'The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events.'"].)

FSG acknowledges there is a conflict between the tolling bar in the arbitration agreement and Code of Civil Procedure section 1281.12, but it contends section 1281.12 governs because the agreement provides in its "General Procedures" (section 3.b) that the arbitrator must apply the substantive law of the state in which the claim arose, and under section 8, the FAA "will govern the interpretation, enforcement, and all judicial proceedings under and/or with respect to the Arbitration Agreement." (Italics omitted.) FSG provides no authority for its contention the reference to state law in the general procedures section would take precedence over the specific provision barring tolling of the statute of limitations. Nor does FSG explain why application of the FAA would ensure that Code of Civil Procedure section 1281.12's tolling provision would apply. We agree with

Mills the arbitration provision barring the tolling of the limitations period is substantively unconscionable.

6. *The waiver of Mills's representative PAGA claim is invalid under California law*

Section 9 of the arbitration agreement provides under the heading, "No Class Actions," "I agree that I will pursue any claim or cause of action against FSG solely on an individual basis, and waive any and all rights to proceed as a member of a group or class against FSG." (Boldface omitted.)  It is undisputed that California's prohibition on class action waivers is preempted by the FAA.  (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 351; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 359-360 (*Iskanian*), overruled in part by *Viking River Cruises, Inc. v. Moriana* (2022) 595 U.S. ___ [142 S.Ct. 1906] (*Viking River*).)  FSG contends California's bar against waivers of the right to bring representative PAGA actions is likewise preempted under the FAA.  It is not.

PAGA authorizes "'an "aggrieved employee" [to] bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. (Lab. Code, § 2699, subd. (a).)'" (*Iskanian, supra*, 59 Cal.4th at p. 380.)  Under the statute, 75 percent of the civil penalties are distributed to the Labor and Workforce Development Agency, with the remaining 25 percent to the "aggrieved employees." (*Ibid*; see § 2699, subd. (i).)  The *Iskanian* court held PAGA waivers, like class action waivers, are "contrary to public policy and unenforceable as a matter of state law." (*Iskanian*, at p. 384.)  However, unlike class action waivers, the court concluded the FAA does not preempt California law invalidating

31

PAGA waivers because PAGA claims are brought by the aggrieved employee as a "statutorily designated proxy" for the Labor and Workforce Development Agency, not on the employee's own behalf to resolve a private dispute. (*Id*. at p. 388.) Therefore, "California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the Labor and Workforce Development Agency's interest in enforcing the Labor Code, does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." (*Id*. at pp. 388-389.)

FSG contends in its reply brief that the United States Supreme Court's recent decision in *Viking River, supra*, 142 S.Ct. 1906 overruled *Iskanian*, requiring dismissal of Mills's representative PAGA claim. FSG fundamentally misreads the scope of *Viking River*. *Iskanian*'s holding that waivers of PAGA claims are unenforceable as against public policy remains good law following *Viking River*.

In *Viking River*, the United States Supreme Court granted certiorari to decide whether *Iskanian*'s holding invalidating PAGA waivers as a matter of public policy was preempted by the FAA. In deciding this question, the court distinguished between "'individual'" PAGA claims, "which are premised on Labor Code violations actually sustained by the plaintiff," and "'representative'" PAGA claims "arising out of events involving other employees." (*Viking River, supra*, 142 S.Ct. at pp. 1916-1917.) The court held the FAA preempted *Iskanian*'s "indivisibility rule," which precluded division of a PAGA action into individual and representative PAGA claims, because it effectively prevented the parties from agreeing to arbitrate an employee's individual claims based on violations suffered by the

employee.  (*Viking River*, at pp. 1924-1925.)  Because *Iskanian* prevented division of a PAGA claim into individual and representative claims, the court reasoned the *Iskanian* holding forced the employer either to arbitrate the individual and representative PAGA claims together, or to give up the right to arbitrate the individual claim.  (*Viking River*, at p. 1924.)

The *Viking River* court explained, "We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.  This holding compels reversal in this case.  The agreement between [Viking and its employee Angie Moriana] purported to waive 'representative' PAGA claims.  Under *Iskanian*, this provision was invalid if construed as a wholesale waiver of PAGA claims.  And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner.  But the severability clause in the agreement provides that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.'  Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim."  (*Viking River, supra*, 142 S.Ct. at pp. 1924-1925.)

Applying *Viking River* to this case, Mills's individual PAGA claim was arbitrable because it did not fall within the arbitration agreement's waiver of the employee's right "to proceed as a member of a group or class against FSG."  However, the arbitration agreement's waiver of Mills's representative PAGA claim remains unenforceable under *Iskanian* as against public policy.  The trial court did not err in finding the representative

33

claim waiver, as applied to Mills's representative PAGA claim, is invalid and unenforceable.[11]

FSG in its reply brief argues that under *Viking River*, even assuming the waiver of Mills's representative PAGA claim was invalid, the claim should be dismissed for lack of standing. FSG is correct that the majority opinion in *Viking River* concludes in dicta that although PAGA waivers are unenforceable under California law, the employee on remand would no longer have standing to assert those claims because his or her individual PAGA claim would be subject to arbitration. (*Viking River, supra*, 142 S.Ct. at p. 1925.) As the court explained, "Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. See [Lab. Code, § 2699, subds. (a), (c)]. When an employee's own dispute is pared away from a PAGA action, the employee is no different from a

---

[11] At least one appellate court has found a PAGA waiver in an arbitration agreement is substantively unconscionable. (See *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 496, 503-504 [affirming trial court order denying motion to compel arbitration because PAGA waiver in employment agreement was unenforceable and substantively unconscionable but remanding to determine if the offending provision could be severed]; but see *Poublon v. C.H. Robinson Company* (9th Cir. 2017) 846 F.3d 1251, 1264 ["the unenforceability of the waiver of a PAGA representative action does not make this provision substantively unconscionable"].) We need not resolve whether the PAGA waiver is substantively unconscionable (or simply invalid as against public policy) because regardless of whether the PAGA waiver is unconscionable, the trial court would have needed to sever the provision to make the arbitration agreement enforceable.

member of the general public, and PAGA does not allow such persons to maintain suit. [Citation.] . . . As a result, Moriana lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Viking River*, at p. 1925.)

Although this reading of California law would require dismissal of Mills's representative PAGA claim for lack of standing, as Justice Sonia Sotomayor suggested in her concurrence, whether an employee has standing to bring a representative PAGA claim in state court once the employee's individual PAGA claim is sent to arbitration is a question for the California courts to resolve. Justice Sotomayor observed, "[I]f this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word." (*Viking River, supra*, 142 S.Ct. at p. 1925 [conc. opn. of Sotomayor, J.].) We need not decide whether Mills would have had standing to pursue his representative PAGA claim in the trial court had his individual PAGA claim been ordered to arbitration because the only question before us is whether the arbitration agreement's waiver of Mills's representative PAGA claim was valid. Under *Viking River* and *Iskanian*, it was not.[12]

---

[12] Mills has forfeited his argument on appeal that the arbitration agreement's confidentiality provision (requiring the arbitration award be kept confidential except as necessary for judicial enforcement) is unlawful by not asserting this argument in his opposition to the motion to compel arbitration. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1026 [an argument """may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it"""]; *Professional Collection*

E.     *The Trial Court Did Not Abuse Its Discretion in Declining To Sever the Unconscionable Arbitration Terms*

Civil Code section 1670.5, subdivision (a), provides, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  As the Supreme Court observed in *Armendariz, supra*, 24 Cal.4th at page 122, "the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement.  But it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability."

The *Armendariz* court elaborated, "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124.)  "The overarching inquiry is whether "'the interests of justice . . . would be furthered'" by severance.  [Citation.]  Moreover, courts must have the *capacity* to cure the unlawful contract through severance or restriction of the offending clause, which . . . is not invariably the

---

*Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 972 [""'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court."'"].)

case." (*Ibid.*) We review for an abuse of discretion the trial court's decision not to sever the unconscionable provisions. (*Ibid.*; *Lange v. Monster Energy Company* (2020) 46 Cal.App.5th 436, 453; *De Leon, supra*, 72 Cal.App.5th at p. 492.)

In *Armendariz*, there were two unlawful provisions in the arbitration agreement—a limitation on an employee's recoverable damages and a unilateral arbitration clause requiring an employee to arbitrate wrongful termination claims, but not requiring an employer to arbitrate its claims against the employee. (*Armendariz, supra*, 24 Cal.4th at pp. 124-125.) The Supreme Court held in light of "the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose." (*Id.* at p. 124.) The court explained that where an arbitration agreement has more than one unlawful provision, "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Ibid.*) Further, the lack of mutuality in the agreement could not be remedied by merely severing a provision, but rather, the court would need to reform the agreement by augmenting it with additional terms. (*Id.* at pp. 124-125.) Where "a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement." (*Id.* at p. 125; see *De Leon, supra*, 72 Cal.App.5th at pp. 492-493 [declining to sever unlawful statute of limitations and discovery provisions of arbitration agreement, explaining if ""the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," the court must void

37

the entire agreement"']; *Pinela v. Neiman Marcus Group, Inc.,
supra*, 238 Cal.App.4th at p. 256 [explaining in denying motion to
compel arbitration of wage and hour lawsuit that "the
unconscionability we have found permeates the NMG Arbitration
Agreement to such a degree that severance would amount to
rewriting the parties' contract, something we cannot do"]; *Wherry
v. Award, Inc., supra*, 192 Cal.App.4th at p. 1250 [declining to
sever unlawful attorneys' fees and costs provisions of arbitration
agreement in FEHA action, explaining that "when the agreement
is rife with unconscionability, as here, the overriding policy
requires that the arbitration be rejected"].)

By contrast, in *Little, supra*, 29 Cal.4th at page 1075, the
Supreme Court concluded severance of an unconscionable term in
an employment agreement was appropriate where there was only
one unlawful provision, and "the offending provision [could] be
severed and the rest of the arbitration agreement left intact."
The provision at issue authorized a party to appeal only awards
exceeding $50,000. (*Id.* at p. 1073.) As the court explained, the
$50,000 threshold "inordinately benefits defendants" because the
employer would be more likely to appeal a substantial award, but
an employee would be more likely to appeal an award of no
damages. (*Ibid.*)

FSG contends that even if there are six unlawful provisions
in the arbitration agreement, this did not support voiding the
agreement because the unlawful provisions could be severed from
those that are valid.[13] However, not all of the unlawful

___

[13] FSG also asserts it did not act in bad faith in that it
incorporated the AAA rules into the agreement to ensure that it
was lawful. Although the arbitration agreement incorporated the

38

provisions could be severed. Moreover, the trial court did not abuse its discretion in finding the inclusion of multiple unlawful terms permeated the agreement with unconscionability.

FSG is correct that some of the offending provisions could have been severed. For example, the trial court could have severed the sentence in paragraph 1 barring tolling of the statute of limitations. Similarly, as to the $250 filing fee, the court could have removed the reference to payment by the employee of a filing fee or the bar to reallocation of the fee. The provision requiring a party to pay for the costs of a postponement it caused also could be severed. Likewise, the waiver of PAGA representative claims could be deleted.

However, multiple other provisions would need to be rewritten. The discovery provision would need to be substantially revised to allow for written discovery. The court could not simply delete the requirement that a party show substantial need for additional discovery, nor could it reform the contract to specify allowable amounts of written discovery to save the agreement.[14] The attorneys' fees provision would likewise

AAA rules, the agreement contains more specific provisions (for example, as to limited discovery, attorneys' fees, and costs) that conflict with the AAA rules. As discussed, the specific provisions take precedence over the general AAA rules. Further, at the time Mills signed the agreement, case law was clear that these specific provisions were unenforceable. Had FSG wanted to ensure the arbitration agreement was enforceable, it should not have included the invalid provisions.

[14]    FSG does not explain how the offending provisions could be severed or modified without the trial court rewriting the arbitration agreement. Arguably the court could have deleted the

need to be modified to be consistent with California law on the recovery of attorneys' fees and costs for Labor Code claims. With respect to the costs of an appeal and a potential rehearing, section 7 would need to be reformed to remove the requirement that Mills pay the fees and expenses of the three-arbitrator appellate panel and share the costs of a potential second arbitration. In light of this significant rewriting of the two-page arbitration agreement and multiple substantively unconscionable provisions, the trial court did not abuse its discretion in declining to sever the unconscionable terms.

FSG argues, citing to the Ninth Circuit's decision in *Poublon v. C.H. Robinson Company* (9th Cir. 2017) 846 F.3d 1251, 1273, that California does not have a "per se" rule that an arbitration agreement is permeated with unconscionability if more than one provision in an arbitration agreement is unconscionable. We agree with that proposition, but in denying the motion, the trial court did not cite to a "per se" rule of unconscionability. Instead, the court properly recounted the numerous specific provisions that would need to be severed (or reformed) to make the agreement enforceable. Moreover, where, as here, an arbitration agreement has numerous unconscionable provisions, those provisions taint the agreement with illegality such that even if each unlawful provision could be surgically removed from the agreement, the one-sided agreement is not

discovery provision entirely, substituting the AAA rules for the one-sided discovery provision in the arbitration agreement, but that in turn would have modified the other discovery allowed, for example, the unlimited depositions afforded under the arbitration agreement.

enforceable.  (See *Armendariz, supra*, 24 Cal.4th at p. 124.)  To enforce the agreement would incentivize employers to impose multiple unlawful arbitration provisions on employees, who would likely forego bringing suit for fear they would be forced to bear the costs and burdens of the one-sided arbitration agreement.  If an employee had the resources to bring suit in court and challenge enforcement of the arbitration agreement, the employer could still compel arbitration if the trial court was willing to sever the offending provisions.

Although California law favors arbitration as an efficient means of resolving disputes, the courts have an obligation "'to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness.'" (*Armendariz, supra*, 24 Cal.4th at p. 115.)  Given the unfairness that permeates FSG's one-sided arbitration agreement, the trial court did not abuse its discretion in declining to sever the substantively unconscionable terms.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Mills shall recover his costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.          SEGAL, J.

41